WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Stacey L. Leavell,

    Plaintiff,

v.

Commissioner of Social Security Administration,

    Defendant.

No. CV-18-00303-PHX-SMB

**ORDER**

At issue is Defendant's denial of Plaintiff's application for Title II disability insurance benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the denial, and the Court now considers Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant's Response (Doc. 16, "Def. Br."), Plaintiff's Reply (Doc. 19), and the Administrative Record (Doc. 11, "R."). Because the Court finds legal error in the decision, it reverses and remands for further administrative proceedings.

**I. BACKGROUND**

Plaintiff filed her application on October 29, 2013, alleging disability beginning March 30, 2010 (later amended to January 7, 2012), and was denied initially on April 7, 2014 and upon reconsideration on November 4, 2014.[1] (R. at 18.) Plaintiff requested a

---

[1] Plaintiff filed a prior application for disability insurance benefits on April 28, 2010, the denial of which became final on July 16, 2013. (R. at 83–99, 107–110.) While res judicata ordinarily imposes a presumption of non-disability absent a change of circumstances, *see Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995), the ALJ here found Plaintiff overcame the presumption by presenting "new and material evidence." (R. at 18–19.)

hearing before an administrative law judge ("ALJ"), which was held on February 25, 2016. (R. at 18.) On June 29, 2016, the ALJ issued her decision finding Plaintiff not disabled, which was upheld by the Appeals Council on November 30, 2017. (R. at 1–3, 18–36.) In reaching this conclusion, the ALJ found Plaintiff was capable of the following:

> [T]he claimant had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR § 404.1567(b). She could lift and carry 20 pounds occasionally and 10 pounds frequently, and push/pull as much as she could lift and carry. The claimant could sit for six hours, but needed to alternate to standing for 10 minutes after every hour of sitting; stand for six hours, but needed to alternate to sitting for 10 minutes after every hour of standing; and walk for six hours, but needed to alternate to sitting for 10 minutes after every our of walking. She could frequently use foot controls bilaterally and frequently use hand controls bilaterally. The claimant could frequently handle bilaterally and frequently finger bilaterally. She could occasionally climb ramps and stairs, stoop, kneel, and crawl; never climb ladders and scaffolds; and frequently balance and crouch. The claimant could never be around unprotected heights and moving mechanical parts; could have frequent exposure to humidity and wetness; and needed to avoid concentrated exposure to extreme cold and heat. In addition to normal breaks, the claimant would have been off-task five percent of the time in an eight-hour workday. She was also limited to performing simple, routine tasks and making simple work-related decisions.

(R. at 25.) In formulating the RFC, the ALJ gave "great weight" to the opinions of state agency medical consultants, Michael Keer, D.O. and Erika Wavak, M.D., but only "little weight" to the opinions of all treating physicians, rejected Plaintiff's subjective pain and symptom testimony, and only gave "some weight" to subjective testimony from Plaintiff's husband, Brian Leavell. (R. at 26, 32.) A vocational expert ("VE") testified that an individual with the above RFC could perform work in the national economy as a booth cashier, office helper, or routing clerk. (R. at 35, 75–76.) Thus, the ALJ found Plaintiff not disabled.

Plaintiff brings this appeal alleging the ALJ committed materially harmful error by: (1) rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole; (2) basing

the unfavorable decision solely on medical opinions from state agency doctors who completed assessment forms as part of the initial and reconsideration determinations, which were based on only a limited record review; and (3) giving "little weight"[2] to lay evidence in third party agency reports from Plaintiff's husband. (Pl. Br. at 1–2.)

## II. LEGAL STANDARD

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), which provides that a reviewing court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. The district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the decision only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). Even if the decision contains a legal error, the Court will not reverse the decision where the error is "harmless" as "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [her] decision with less than ideal clarity." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The Court "must consider the record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

---

[2] In actuality, the ALJ gave this evidence "some weight." (R. at 26.)

- 3 -

# III. ANALYSIS

To determine whether a claimant is "disabled" under the Act, the ALJ employs a five-step process. *See* 20 C.F.R. § 404.1520(a)(4). The burden of proof is on the claimant for the first four steps but shifts to the ALJ at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must show she is not presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, she must show she suffers from a "severe medically determinable" impairment(s). *Id.* § 404.1520(a)(4)(ii). Third, she must show that the impairment meets or equals an impairment in appendix 1 of subpart P of 20 C.F.R § 404. *Id.* § 404.1520(a)(4)(iii). However, if the claimant fails to satisfy step three, she can still make out a prima facie case of disability at step four by showing she is unable to perform any past relevant work and by meeting steps one and two. *Id.* § 404.1520(a)(4)(iv). The ALJ determines if the claimant met step four by assessing the claimant's RFC. *Id.* At the fifth and final step, the burden shifts to the ALJ to show that the claimant is able to perform other work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(1).

## A. The opinions of the state examiners qualify as "substantial evidence."

Plaintiff alleges the ALJ erred "by basing the unfavorable decision solely on medical opinions from state agency doctors who completed assessment forms as part of the initial and reconsideration determinations, which were based on only a limited record review." (Pl. Br. at 10.) The crux of Plaintiff's argument is that "[t]he sole medical basis for the ALJ decision, whether the nonexamining reviewers' opinions or the ALJ's own opinion, was insubstantial evidence." (Pl. Br. at 16.)

In assessing a claimant's RFC, the ALJ must evaluate each medical opinion in the record, assign a weight to each, and resolve any conflicts between them. 20 C.F.R. § 404.1527(c); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-

examining physicians are entitled to the least weight. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).[3] If an ALJ is to depart from this general hierarchy, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence" when crediting the opinion of a non-examining physician over one of a treating physician where the opinions are inconsistent. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. "The opinions of non-treating or non-examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Dr. Keer and Dr. Wavak reviewed Plaintiff's application at the initial and reconsideration levels, respectively, and rendered identical opinions. (R. at 32, 125–127, 142–143.) Based on a review of the record, both opined Plaintiff could frequently lift or carry 10 pounds, occasionally 20 pounds, and could push or pull as much as she could lift or carry; she could stand, walk, or sit for more than 6 hours in an 8-hour workday; she could occasionally climb ramps or stairs, but could never climb ladders, ropes or scaffolds; she could occasionally balance, stoop, kneel, crouch, or crawl; she had no manipulative limitations; and she needed to avoid concentrated exposure to temperatures, heights, and machinery. (R. at 125–127, 142–143.) The ALJ gave "great weight" to their opinions, finding them "consistent with" an "examination showing abnormal 10-g monofilament wire test with no plantar sensation bilaterally" and an "examination revealing tenderness in the glenohumeral joints, wrists, hands, fingers, hip joints, feet, cervical spine, and lumbar spine." (R. at 32.) Specifically, the ALJ found the abnormal 10-g monofilament wire test showing no plantar sensation bilaterally (which had led to a diagnosis of diabetic

---

[3] The regulations provide that the amount of weight given to any medical opinion depends on a variety of factors, namely: whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)–404.1527(c)(6).

neuropathy) "supportive of [Plaintiff's] foot and hand control limitations, her manipulative limitations, and her limitation to never climbing ladders and scaffolds." (R. at 29.) In discussing Plaintiff's ankylosing spondylitis, fibromyalgia, and rheumatoid arthritis, the ALJ noted a treating physician's finding of "tenderness in the glenohumeral joints, wrists, hands, fingers, hip joints, feet, cervical spine, and lumbar spine." (R. at 27.) With respect to these three conditions, the ALJ found that these "observations and findings are supportive of [Plaintiff's] limitation to light work, her need to alternate from sitting, standing, and walking after every hour for 10 minutes, her environmental limitations, and her need to be off-task five percent of the time." (R. at 27.)

Turning to Plaintiff's argument, the Court is not convinced that the "sole medical basis" of the ALJ's decision was "insubstantial evidence." As noted by the ALJ, other evidence in the record supports the limitations opined to by the nonexamining physicians; thus, their opinions themselves are substantial evidence. Moreover, the ALJ also considered other medical evidence in formulating Plaintiff's RFC besides these opinions. Despite having afforded "little weight" to the opinions of Plaintiff's treating physicians (which Plaintiff does not dispute[4]), the ALJ nevertheless referenced their treatment notes in prescribing additional limitations in the RFC assessment in addition to what the nonexamining physicians prescribed. (R. at 31–32.) For instance, the ALJ found that Plaintiff needed to "alternate from sitting, standing, and walking after every hour for 10 minutes" based on "observations and findings" by her treating physician and physician assistant at Arizona Arthritis and Rheumatology Associates, which included the aforementioned finding of tenderness in her joints. (R. at 27.) While Dr. Keer and Dr. Wavak opined that Plaintiff could sit, stand, or walk for 6 hours, neither prescribed this additional limitation. Additionally, the ALJ limited Plaintiff's work to "simple, routine tasks and making simple work-related decisions" based on "observations" made by her treating psychiatrists. (R. at 31.) Again, neither Dr. Keer nor Dr. Wavak prescribed such a

---

[4] Because the Court only reviews issues brought by a party challenging the decision, it will presume the ALJ's reasons to assign "little weight" to the treating physicians' opinions are specific and legitimate given that Plaintiff does not proffer any argument to the contrary.

limitation. Moreover, while both Dr. Keer and Dr. Wavak opined that Plaintiff should avoid "concentrated exposure" to "hazards (machinery, heights, etc.)," the ALJ also noted that treatment notes from a treating physician also supported this restriction where the physician had diagnosed Plaintiff with narcolepsy. (R. at 28.)

In response, Plaintiff alleges that the source of these additional limitations was not the medical evidence, but rather the ALJ's own lay interpretation of the medical record, which would not be substantial evidence. The Court finds this allegation without merit. The ALJ has a duty to assess a claimant's residual functional capacity "based on all of the relevant medical and other evidence" and a duty to resolve conflicts between conflicting medical opinions. 20 C.F.R. § 404.1545(a)(3); *Morgan*, 169 F.3d at 601. These duties necessarily compel the ALJ to draw inferences from medical opinion evidence.

Plaintiff, however, alleges that because Dr. Keer and Dr. Wavak completed their assessments in March 2014 (R. at 127) and November 2014 (R. at 143), respectively, and the hearing before the ALJ occurred in February 2016, their opinions "could not have fulfilled all of the regulatory requirements for evaluation of medical opinion evidence." (Pl. Br. at 11.) In support, Plaintiff cites 20 C.F.R. §§ 404.1527(c)(3)–404.1527(c)(6). These regulations delineate factors to be considered in weighing a medical opinion. In particular, 20 C.F.R. § 404.1527(c)(4) provides that "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." This and the other regulations cited by Plaintiff appear under 20 C.F.R. § 404.1527(c), which begins with, "How *we* weigh medical opinions" (emphasis added). "We" is defined as "the Social Security Administration or the State agency making the disability . . . determination." 20 C.F.R. § 404.1502(j). Thus, these regulations provide a framework to *the ALJ*, as the one responsible for the disability determination here, not to physicians rendering medical opinions. Neither the regulations cited by Plaintiff nor any other regulations require a physician to have considered the entire record (the one before the ALJ and before this Court) in order to render a competent medical opinion. Rather, it is the job of the ALJ to consider the record as a whole and to determine, based on her evaluation of

the record as a whole, how consistent a particular medical opinion is with the it. Here, the ALJ did just that and cited to medical evidence of record which the opinions were consistent with. Therefore, the Court finds no error as the ALJ's RFC formulation is supported by substantial evidence.

**B. The ALJ improperly discounted Plaintiff's testimony.**

Plaintiff alleges the ALJ erred in rejecting Plaintiff's symptom testimony by failing to articulate specific, clear, and convincing reasons supported by substantial evidence in the record as whole. (Pl. Br. at 6.)

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ also considers a claimant's statements regarding her pain and symptoms in determining the extent to which they diminish her capacity for work. 20 C.F.R. § 404.1529(c)(3). Before evaluating such testimony, the ALJ first determines whether a claimant has presented "objective medical evidence from an acceptable medical source" of an "impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(a). Next, the ALJ evaluates the alleged "intensity and persistence" of the symptoms to determine how they limit a claimant's capacity for work. *Id.* § 404.1529(c)(1). Since symptoms and pain "are subjective and difficult to quantify," a claimant's pain and symptoms will only be determined to diminish a claimant's work capacity to the extent that they can be "reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record. *Id.* § 404.1529(c)(3). However, a claimant's testimony "cannot be rejected solely because the objective medical evidence does not support the severity of her impairment." *Thomas*, 278 F.3d at 959; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [the] credibility analysis.").

In evaluating the credibility of a claimant's testimony, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony

from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997); *see* 20 C.F.R. § 404.1529(c)(4). Unless there is evidence of malingering by the claimant, an ALJ may only discredit pain or symptom testimony for reasons that are specific, clear, and convincing. *Burch*, 400 F.3d at 680. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison*, 759 F.3d at 1010. Moreover, discussion of issues not in the section of the ALJ's decision addressing a claimant's symptom testimony are not properly considered credibility findings. *Trevizo v. Berryhill*, 871 F.3 664, 682 n.10 (9th Cir. 2017). General findings pertaining to a claimant's credibility are not sufficient. *Lester*, 81 F.3d at 821. Likewise, "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 494.

Here, the ALJ cited no evidence of malingering and found Plaintiff had underlying severe impairments: ankylosing spondylitis, fibromyalgia, rheumatoid arthritis, type I diabetes mellitus, Crohn's disease, gastroparesis, narcolepsy, diabetic neuropathy, obesity, anxiety disorder, and major depressive disorder. (R. at 21.) However, the ALJ found Plaintiff's testimony regarding the "intensity, persistence, and limiting effects" of her symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 26.) Moreover, following a discussion of the medical evidence for each impairment, the ALJ concluded that her

assessment of Plaintiff's RFC "is supported by the objective evidence contained in the record" and "[t]reatment notes in the record do not sustain the claimant's allegation of disabling conditions." (R. at 33.)

The Court finds error. An ALJ may not reject a claimant's testimony solely because the objective medical evidence does not support the severity of symptoms alleged. *See Thomas*, 278 F.3d at 959. Likewise, a summary of the medical evidence in support of an RFC is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible. *See Brown-Hunter*, 806 F.3d at 494. Here, the ALJ does both. The ALJ articulates no other reasons (i.e. inconsistencies between testimony and daily activities) nor does she discuss any "other evidence" besides medical evidence in concluding that Plaintiff's symptoms are not as severe as alleged. Defendant, however, points to inconsistencies in the record to support the ALJ's adverse credibility determination. (Def. Br. at 5–6.) While such inconsistencies may indeed undermine Plaintiff's credibility, nowhere in the decision does *the ALJ* mention them or assert their existence as a basis for discrediting the testimony. Because the Court may not affirm the ALJ on a ground which *the ALJ* did not rely, Defendant's reference to these inconsistencies does nothing to save the ALJ's erroneous discrediting of Plaintiff's testimony. As far as the Court can tell based on the literal text of the decision, the only "clear" reasons for rejecting Plaintiff's testimony are the ones previously mentioned, which both only rely on inconsistencies between her testimony and objective medical evidence. Thus, because the ALJ based the adverse credibility determination solely on a lack of supporting objective evidence and articulated no other valid reason, she erred.

**C. The ALJ properly considered lay opinion testimony.**

Nonmedical ("lay witness") sources may testify as to how a claimant's symptoms affect her activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). Such testimony is "competent evidence" that an ALJ may not disregard unless he or she gives "reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

Here, the ALJ gave "some weight" to written testimony from Plaintiff's husband, Brian Leavell. (R. at 26.) The ALJ reasoned that "although Mr. Leavell has frequent close contact with the claimant and can opine as to her level of functioning at home, he also does not have training as an objective medical source." (R. at 26.) The Court finds this reason to be germane. In his third party function report, Mr. Leavell opined that Plaintiff's "illnesses, injuries, or conditions" affect a number of Plaintiff's abilities, including: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and using hands. (R. at 26, citing R. at 300.) Whether or not Plaintiff's impairments are actually responsible for what Mr. Leavell opines to involves a medical determination. The ALJ properly considered his opinion insofar as to what he can actually opine to as a lay person based on his close contact with Plaintiff.

## IV. REMEDY

The credit-as-true rule provides that a remand for calculation and award of benefits is appropriate when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting claimant testimony; and (3) if the improperly discredited testimony were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. However, a court need not apply this rule rigidly and may instead remand for further administrative proceedings "when even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, the Court finds that conditions (1) and (3) of the rule are not satisfied. At the hearing, the VE testified that an individual with Plaintiff's RFC who additionally: would be off task as much as ten percent, had one or more unexcused absences a month, or "need[ed] to lie down over the course of the workday for a period of multiple hours," would be precluded from work. (R. at 77.) Thus, if Plaintiff's testimony establishes one of these three, then her testimony, if credited as true, would require the ALJ to find her disabled.

However, without further development of the record, it is not possible for this Court to ascertain whether the Plaintiff's testimony establishes one of these three scenarios. Specifically, because of its inability to engage in factfinding as a reviewing court, this Court cannot opine as to how much Plaintiff would be off task or how often Plaintiff would be absent. Moreover, Plaintiff merely testifying that she will "usually lay down once a day" for "about two hours" after taking her kids to school does not establish that she *needs* to do so over the course of the workday for a period of multiple hours. (R. at 62.) Therefore, because the credit-as-true rule does not apply, the appropriate remedy is a remand for further administrative proceedings.

**IT IS THEREFORE ORDERED**, reversing the decision of the Commissioner of Social Security and remanding for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 17th day of December, 2019.

Honorable Susan M. Brnovich
United States District Judge